IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

GLOBALONE MANAGEMENT GROUP
LIMITED,

    **Plaintiff,**

v.                                                             CIVIL NO. 4:18cv59

TEMPUS APPLIED SOLUTIONS, LLC
and TEMPUS APPLIED SOLUTIONS
HOLDINGS, INC.,

    **Defendants.**

## OPINION AND ORDER

This matter comes before the Court on five motions filed by defendants Tempus Applied Solutions, LLC and Tempus Applied Solutions Holdings, Inc., including motions to compel arbitration and to stay proceedings pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1, et seq., ECF Nos. 31 and 32, and three motions to partially dismiss plaintiff's complaint, ECF Nos. 34–36. For the reasons set forth below, the Court **GRANTS** Defendants' motions to compel arbitration and stay proceedings, **DISMISSES** Defendants' motions to dismiss **WITHOUT PREJUDICE**, and **STAYS** this action consistent with the directives of this Order.

### I.    PROCEDURAL HISTORY

On May 23, 2018, GlobalOne Management Group Limited ("GlobalOne" or "Plaintiff") filed a complaint against Tempus Applied Solutions, LLC ("Tempus") and Tempus Applied Solutions Holdings, Inc. ("TASH") (collectively, "Defendants") seeking a declaratory judgment, injunctive relief, and damages in relation to a certain aircraft management agreement between the parties. ECF No. 1. Initially, Defendants failed to appear or timely respond to GlobalOne's

1

complaint, and the Clerk entered default against Defendants at GlobalOne's request. However, on September 7, 2018, Defendants filed an unopposed Motion to Set Aside Default, which the Court granted on September 11, 2018. ECF Nos. 25, 30.

On September 17, 2018, Defendants filed the instant motions to compel arbitration ("Motion to Compel") and to stay all proceedings pending such arbitration ("Motion to Stay") claiming that the parties entered a legally binding agreement to arbitrate their dispute before the International Chamber of Commerce in Paris, France. ECF Nos. 31 and 32; see Memorandum in Support ("Mem."), ECF No. 33. In the alternative, the Defendants also filed three motions to dismiss various portions of GlobalOne's complaint.[1] ECF Nos. 34–36; see Mem., ECF No. 37.

On October 1, 2018, GlobalOne filed a response in opposition to Defendants' Motion to Compel and Motion to Stay ("Resp."), ECF No. 39, and a separate response in opposition to Defendants' three motions to dismiss, ECF No. 40. On October 8, 2018, GlobalOne filed a combined reply brief. ECF No. 42. On November 20, 2018, the parties appeared for oral argument on Defendants' five pending motions, and the Court took the matter under advisement. Such motions are now before the Court.

## II. FACTUAL BACKGROUND

GlobalOne is a corporation organized under the laws of the British Virgin Islands with its principal place of business in Cyprus. Complaint ("Compl."), ECF No. 1 ¶ 29. At all times relevant to the complaint, GlobalOne operated a 2012 Bombardier Global 6000 with a Rolls-Royce BR710A2-20 engine (hereinafter, the "Aircraft") for business and personal use. Id. ¶¶ 3, 36.

---

[1] Specifically, Defendants filed (1) a motion to dismiss Count III (conversion) and Count IV (detinue) of the complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, ECF No. 34; (2) a motion to dismiss all claims against TASH for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, ECF No. 35; and (3) a motion to dismiss all claims against TASH and Count II (declaratory judgment) against both Defendants for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 36.

2

TASH is a Delaware corporation with its principal place of business in Williamsburg, Virginia. Id. ¶ 30. TASH is the sole member of Tempus, which is a limited liability company operating in Williamsburg, Virginia. Id. ¶ 31.

## A. THE 2017 AIRCRAFT MANAGEMENT AGREEMENT

On March 1, 2017, GlobalOne and Tempus entered into an Aircraft Management Agreement ("AMA") whereby Tempus agreed to provide management, operation, and maintenance services for GlobalOne's Aircraft in exchange for a monthly fee of $110,000.00. See Ex. 1 to the Compl., ECF No. 1-1 (hereinafter "AMA"), § 9.1. Upon entering this agreement, GlobalOne paid Tempus an "Operating Deposit" in the amount of $750,000.00.[2] Id. § 3.

The AMA requires each party to cover certain costs in connection with maintaining and operating the Aircraft during the term of the agreement. For example, Section 9.1 of the AMA requires Tempus to cover the cost of training and compensating the pilots and crew (§ 9.1.1), the annual cost of insurance (§ 9.1.1.2), and the annual cost of maintaining flight manuals and subscriptions to tracking programs and navigation databases that are required under the agreement (§ 9.1.1.3). GlobalOne, on the other hand, is required to reimburse Tempus for the cost of fuel, consumables, and certain incidentals, including landing and parking fees, crew travel expenses, airway and navigation fees, and customs fees at fixed rates (§ 9.2) as well as other services and benefits at actual cost as set forth in the agreement (§§ 9.3–9.4).

The term of the AMA is two years (§ 2.1), but either party may terminate the AMA for any reason upon sixty days written notice to the other party (§ 2.3). In addition, GlobalOne has the unilateral right to terminate the AMA immediately for cause upon the occurrence of one of eight

---

[2] As set forth in Section 3 of the AMA, Tempus received these funds from its affiliate, Tempus Jets, Inc., which funds were payable to GlobalOne by Tempus Jets, Inc. pursuant to a prior aircraft management agreement dated June 14, 2012. Id. § 3.

enumerated conditions (§ 2.5). Upon expiration or earlier termination of the AMA, Tempus is required to immediately return the Aircraft with all necessary documentation, including "FAA required documentation, certificate of airworthiness, Aircraft registration and all such documents that rightfully belong with the Aircraft and GlobalOne" (collectively hereinafter referred to as the Aircraft "Records") in accordance with Section 2.6 of the AMA. Additionally, Tempus has six weeks after the termination or expiration to submit a summary of outstanding costs and charges to GlobalOne and to "set-off" such charges against the Operating Deposit in accordance with Section 2.7. Tempus must then return the remaining amount of the Operating Deposit to GlobalOne within one day of such offset (§ 2.7).

### B. TERMINATION OF THE AMA

The complaint alleges that on November 14, 2017, GlobalOne notified Tempus that GlobalOne desired to terminate the AMA for business reasons. Compl. ¶ 62. A copy of GlobalOne's notification email is attached to the complaint as Exhibit 3. Id.; see ECF No. 1-3. With its email, GlobalOne sent a draft termination and settlement agreement to Tempus that purported to resolve outstanding matters between the parties in lieu of formally terminating the AMA pursuant to Section 2.3 of the agreement. Id. ¶ 63. In its email, GlobalOne directed Tempus either to accept or to counter the proposed termination agreement by November 20, 2017. Ex. 3 to Compl., ECF No. 1-3. According to the complaint, Tempus acknowledged receipt of GlobalOne's email, but it never responded to GlobalOne's settlement offer. Compl. ¶¶ 64–65.

Rather, on November 22, 2017, Tempus sent a letter to GlobalOne purporting to terminate the AMA. Id. ¶ 67. A copy of this letter is attached to the complaint as Exhibit 4. Id.; see ECF No. 1-4. In such letter, Tempus claims that (1) GlobalOne is in "repudiatory breach" of the AMA for its alleged "ongoing and repeated failure" to pay its outstanding balances, totaling $225,565.33, on eleven different invoices issued to GlobalOne pursuant to the AMA and that (2) Tempus

4

therefore "terminates the AMA at common law." Id. at 2.

The complaint further alleges that on November 29, 2017, Tempus then surrendered the Aircraft at Vnukovo Airport in Moscow without GlobalOne's knowledge or instruction. Id. ¶ 68. At the time of such surrender, Tempus allegedly had not returned the Aircraft Records or transferred the Aircraft's subscriptions and accounts to GlobalOne. Id. Furthermore, at the time this action was filed in May, 2018, Tempus was allegedly still in possession of certain Aircraft Records and subscriptions despite GlobalOne's repeated requests for same. Id. ¶¶ 68–71, 74. However, during the November 20, 2018 hearing before this Court, counsel for GlobalOne conceded that all Aircraft Records and subscriptions had been returned to GlobalOne as of the date of such hearing.

### C. Tempus's Alleged Risk of Insolvency or Bankruptcy

The complaint also makes certain allegations with respect to Tempus's financial status. Specifically, it alleges that "there is a significant risk" that GlobalOne will not be able to recover any funds or monetary relief from Tempus because Tempus is likely to become insolvent or "judgment proof" in the near future. Compl. ¶ 85. In support of this claim, GlobalOne alleges, for example, that a Prospectus filed with the United States Securities and Exchange Commission ("SEC") on February 12, 2018, disclosed that TASH has suffered "significant operating losses and negative cash flows from [its] operations" and that it has not been and may never be consistently profitable. Id. ¶¶ 86–87 (quoting Prospectus, Ex. 2 to Compl., ECF No. 1-2, at 19). GlobalOne further alleges that TASH's Form 10-Q filed with the SEC on November 28, 2017 (hereinafter "10-Q") states that TASH's "recurring losses," "recurring negative cash flows from operations," and its current capital deficit raise "substantial doubt about the Company's ability to continue as a going concern." Id. ¶ 88 (quoting 10-Q, Ex. 9 to Compl., ECF No. 1-9, at 10). Lastly, the complaint alleges that an affiliate of TASH, whose principal is also the CEO of Tempus, is

5

involved in separate litigation in this Court, and the progress of such litigation appears to indicate that this Tempus affiliate also has serious financial problems. Id. ¶¶ 95–97.

### D. SUMMARY OF GLOBALONE'S CLAIMS

Relying on the foregoing factual allegations, the complaint asserts the following claims.

#### 1. Count I: Breach of Contract against Tempus

Count I alleges that Tempus breached the AMA in five ways: (i) terminating the AMA without providing sixty days' notice; (ii) failing to return certain Aircraft Records to GlobalOne; (iii) failing to transfer all subscriptions and accounts to GlobalOne; (iv) failing to pay certain EUROCONTROL fees assessed against the Aircraft; and (v) failing to return the $750,000.00 Operating Deposit to GlobalOne. Compl. ¶ 100. In addition to judgment in favor of GlobalOne on this claim, Count I also seeks an injunction "ordering Tempus to immediately return the Logbooks and other Aircraft Records to GlobalOne" and "to immediately transfer all subscriptions and accounts registered to the Aircraft to GlobalOne." Id. ¶ 103.

#### 2. Count II: Declaratory Judgment against Tempus

Count II seeks a declaration that "Tempus's knowing and unlawful retention of the Logbooks and certain Aircraft Records and refusal to return the Deposit to GlobalOne constitutes a breach of the AMA." Id. ¶ 107. It further requests an injunction "ordering Tempus to immediately return the remaining Aircraft Records to GlobalOne" and "prohibiting Tempus and any of its affiliates, parent companies or subsidiaries (including [TASH]) from selling, pledging, transferring or otherwise disposing of GlobalOne's $750,000.00 Deposit." Id. ¶ 109.

#### 3. Count III: Conversion against Tempus and TASH

Count III alleges that Tempus and TASH are liable to GlobalOne for their wrongful possession and/or control of certain Aircraft Records. Id. ¶ 114. This count seeks punitive damages and an injunction ordering Defendants to immediately return any remaining Aircraft

Records to GlobalOne. Id. ¶ 115.

### 4. Count IV: Detinue against Tempus and TASH

Count IV is a detinue claim to recover Aircraft Records from Tempus and TASH. Id. ¶ 123. Like Count III, Count IV seeks an injunction ordering Defendants to immediately return any remaining Aircraft Records to GlobalOne. Id. ¶ 124.

### 5. Count V: Piercing of the Corporate Veil against TASH

Lastly, Count V seeks to pierce Tempus's corporate veil such that TASH is held jointly and severally liable for any judgment entered against Tempus in this case. Id. ¶ 133. In support, this count alleges, inter alia, that Tempus has been undercapitalized, that TASH has diverted assets and corporate opportunities from Tempus for the benefit of TASH and its affiliates, and that Tempus has functioned as an alter ego of TASH such that the separate corporate existence between Tempus and TASH is a "fiction." Id. ¶¶ 126–33. Count V seeks a judgment against TASH awarding GlobalOne "at least $1,066,690.00." Id. ¶ 133.

## III. APPLICABLE LAW

In the instant Motions to Compel and to Stay, Defendants argue that this entire dispute is subject to a mandatory arbitration agreement contained in the AMA, and that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., requires the Court to enforce such agreement as written and compel GlobalOne to arbitrate. Chapter 2 of the FAA states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Chapter 4 the provides that, in the event of an alleged failure, neglect, or refusal to arbitrate, the court must compel arbitration if the Court is satisfied that "the making of the agreement for arbitration . . . is not in issue." Id. § 4.

7

Generally, there is a two-step inquiry when deciding whether to compel arbitration under the FAA: the court must (1) determine whether a binding arbitration agreement exists between the parties and then (2) determine whether the dispute falls within the parameters of the arbitration agreement. Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001). In the event a court compels arbitration under the FAA, the court, on application of a party to the dispute, shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Id. § 3. The Supreme Court has been clear that the FAA established a strong federal policy favoring arbitration such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983).

## IV. DISCUSSION

Here, GlobalOne does not dispute that GlobalOne and Tempus entered into a valid and enforceable arbitration agreement as provided in Section 13.12 of the AMA. Such provision states:

> Any dispute, controversy or claim arising out of or in connection with this agreement, including the interpretation, enforcement, validity, breach or termination thereof, shall, *subject to the rights of any party to seek to obtain interlocutory relief in any competent jurisdiction*, be solely and finally settled by arbitration in accordance with the rules on international arbitration of the International Chamber of Commerce (ICC), Paris (France).
>
> The seat of the arbitration shall be in London, England. The number of arbitrators shall be one. The arbitral proceedings shall be conducted in English.

AMA, Exhibit 1 to Compl., ECF No. 1-1, § 13.12 (emphasis added). Rather, GlobalOne argues that Section 13.12 does not apply here because GlobalOne's claims either do not arise out of the AMA or they fall within the interlocutory-relief exception of such provision.

For the reasons below, the Court finds that it must compel arbitration of this dispute and stay proceedings pursuant to Sections 3 and 4 of the FAA.

8

### A. GLOBALONE AND TEMPUS AGREED TO ARBITRATE ISSUES OF ARBITRABILITY UNDER THE AMA.

As a threshold matter, Defendants argue that the arbitrator, not this Court, must determine whether GlobalOne's claims fall within the AMA's mandatory arbitration provision. Mem., ECF No. 33, at 10. As a general rule, arbitrability issues are "questions for the court to decide as a matter of contract interpretation." Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993). "But parties may of course provide by contract for arbitration even of arbitrability issues," id. (citation omitted), so long as such intent is "clearly and unmistakably" set forth in the agreement, Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 102 (4th Cir. 2012) (internal quotations omitted)). "The 'clear and unmistakable' standard is exacting, and presence of an expansive arbitration clause, without more, will not suffice." Id.

Defendants argue that the AMA's arbitration provision clearly and unmistakably shows the contracting parties' intent to arbitrate issues of arbitrability because it expressly incorporates the rules of the ICC as the applicable rules governing the parties' arbitration proceedings. See AMA § 13.12. Article 6.3 of these rules (hereinafter "ICC Rule 6.3") provides:

> If any party against which a claim has been made does not submit an Answer, or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration ***shall be decided directly by the arbitral tribunal***, unless the Secretary General refers the matter to the Court for its decision pursuant to Article 6(4).

ICC Rules of Arbitration, Article 6.3 (March 1, 2017), https://iccwbo.org/dispute-resolution-services/arbitration/rules-of-arbitration/#article_6 (emphasis added). According to Defendants, because ICC Rule 6.3 is expressly incorporated into Section 13.12 of the AMA, GlobalOne and Tempus clearly intended that the ICC, not this Court, determine threshold issues of arbitrability.

9

The Court agrees.

Though the Fourth Circuit has not yet addressed this exact issue, several other circuits have held that incorporating ICC rules into an arbitration agreement constitutes "clear and unmistakable evidence" of the parties' intent to arbitrate arbitrability issues. See, e.g., Apollo Comput., Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989) ("The [ICC rules] clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a prima facie agreement to arbitrate . . ."); Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 122 (2d Cir. 2003) (citing the First Circuit's decision in Apollo); Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co., 862 F.3d 981, 985 (9th Cir. 2017), as amended (Aug. 28, 2017) ("The language [of ICC Rule 6.3] makes clear that the arbitrators are vested with the authority to determine questions of arbitrability.").

Moreover, recent precedent from the Fourth Circuit indicates that it is in accord with these sister circuits. Specifically, in Simply Wireless, Inc. v. T-Mobile US, Inc., 877 F.3d 522, 528 (4th Cir. 2017), the Fourth Circuit considered whether the express incorporation of a different set of arbitration rules, namely, the Judicial Arbitration and Mediation Services Comprehensive Arbitration Rules & Procedures ("JAMS Rules"), constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability issues.[3] It concluded that, "in the context of a commercial contract between sophisticated parties," it does. Id. In so holding, the Simply Wireless court cited to several similar rulings of its sister circuits, including that of the First Circuit

---

[3] Specifically, the court considered JAMS Rule 11(b), which states:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, *shall be submitted to and ruled on by the Arbitrator*. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rules, Rule 11(b), at 14 (July 1, 2014), https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_ rules-2014.pdf (emphasis added).

10

in Apollo, which involved the incorporation of ICC rules, as noted above. Id.

For this reason, the Court is not persuaded by GlobalOne's reliance on Bayer CropScience AG v. Dow AgroSciences LLC, 2012 WL 2878495, at *10 (E.D. Va. July 13, 2012), which was decided several years before Simply Wireless and held that the invocation of the ICC rules in an arbitration clause was insufficient evidence of an agreement to arbitrate arbitrability. In Bayer, the Court reasoned that it should apply the default rule of Virginia Carolina Tools because "the Fourth Circuit has not yet ruled on the question of whether an agreement's incorporation of a specific set of arbitration rules means that the parties clearly intended to submit this threshold issue to arbitration." Id. The Fourth Circuit later decided this precise issue in Simply Wireless.

Therefore, following the Fourth Circuit's guidance in Simply Wireless, the Court **FINDS** that the express incorporation of the ICC Rules into the AMA's arbitration provision in this case is clear and unmistakable evidence that GlobalOne and Tempus agreed to arbitrate issues of arbitrability (hereinafter referred to as their "Delegation Agreement").

### B. Defendants' Demand for Arbitration in this Case is Not Frivolous or Illegitimate.

The next issue before the Court is whether it should enforce this Delegation Agreement such that all disputed claims of arbitrability in this case are referred to arbitration. As the Fourth Circuit explained in Simply Wireless, enforcing delegation agreements is not automatic. 877 F.3d at 528–29. Consistent with the principles set forth in Rule 11(b) of the Federal Rules of Civil Procedure, claims of arbitrability that are "frivolous or illegitimate" need not, and should not, be referred to arbitration notwithstanding the existence of a valid delegation agreement. Id. at 529. Therefore, the Court must determine whether Defendants' assertion that the entirety of the parties' dispute is subject to the AMA's arbitration agreement is frivolous or illegitimate.

GlobalOne argues that its claims in this case are plainly not arbitrable, "as they fall outside of the express scope of the parties' arbitration agreement." Opp., ECF No. 39, at 5. GlobalOne asserts three main grounds to support this claim: (1) that its tort claims against Tempus for conversion and detinue arise out of common law, not the AMA; (2) that the arbitration agreement between GlobalOne and Tempus is not enforceable as to TASH, a non-signatory to the AMA; and (3) that all of GlobalOne's claims fall within the interlocutory relief exception of the AMA. However, as discussed below, none of these challenges succeeds in showing that Defendants' arbitration demand in this case is frivolous or illegitimate.

### 1. GlobalOne's Tort Claims against Tempus are Arguably Related to the AMA.

GlobalOne's conversion and detinue claims (Counts III and IV, respectively) are based entirely on the Defendants' wrongful possession and/or control of certain Aircraft Records. Because such wrongful possession occurred <u>after</u> Tempus purported to terminate the AMA in November, 2017, GlobalOne argues that these torts do not "aris[e] out of or in connection with" the AMA and thus fall outside of the parties' arbitration agreement. See AMA § 13.12.

As a threshold matter, GlobalOne admitted at the November 2018 hearing that Defendants have since returned all of GlobalOne's Aircraft Records and that GlobalOne's demand for these Records is now moot. However, GlobalOne maintains that it is entitled to damages for Defendants' conversion of its assets.

Regardless, the Court finds that GlobalOne's tort claims are sufficiently related to the AMA such that Tempus's demand to arbitrate these claims is not frivolous. The complaint alleges that Tempus came into possession of the Aircraft Records because of the AMA and was thereafter obligated to return such Records to GlobalOne pursuant to the terms of the AMA. Compl. ¶ 118. Therefore, Tempus has at least an arguable basis to assert that these tort claims are subject to the

AMA's arbitration provision.

2. **The Claims against TASH are Arguably within the Scope of Arbitrability.**

GlobalOne also challenges the arbitrability of its claims against TASH given that TASH is not a party to the AMA and therefore not a party to the arbitration agreement. GlobalOne admits that referring claims against non-signatory parent companies to arbitration is appropriate in certain circumstances where the claims against the parent and its subsidiary "are based on the same facts and are inherently inseparable." Opp., ECF No. 39 at 12 (quoting J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textitle, S.A., 863 F.2d 315, 320–21 (4th Cir. 1988)). But GlobalOne insists that such circumstances do not exist in this case because GlobalOne seeks to pierce the corporate veil between TASH and Tempus based on "an entirely unrelated set of facts" from those underpinning its claims against Tempus. Id. at 13.

It is true that GlobalOne alleges certain corporate characteristics and behaviors of the Defendants in support of its veil-piercing claim that are unrelated to the AMA. See generally Comp. ¶¶ 85–97. However, GlobalOne attempts to pierce the corporate veil between TASH and Tempus in this case precisely so that TASH becomes jointly liable for any money damages that may be awarded to GlobalOne for Tempus's alleged breach of the AMA. Compl. ¶ 133. In other words, GlobalOne cannot recover against TASH without first prevailing on its claims against Tempus, all of which are arguably related to the AMA and thus arguably subject to its arbitration provision, as discussed herein. Furthermore, other courts have held that non-signatories to an arbitration agreement may nevertheless be bound to such agreement according to "ordinary principles of contract and agency," including veil-piercing. See, e.g., Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97 (2d Cir. 1999). Therefore, Defendants' request to arbitrate the claims against TASH is not frivolous or illegitimate in this case because such claims are arguably within the scope of the AMA's arbitration clause.

### 3. GlobalOne Has Not Sought Interlocutory Relief in this Case.

Finally, GlobalOne argues that all of its claims seek "immediate" injunctive relief and therefore fall within the exception carved out in the AMA's arbitration clause relating to efforts "to obtain interlocutory relief in any competent jurisdiction." See AMA § 13.12. For example, Count III (conversion) and Count IV (detinue) both seek the "immediate[] return" of Aircraft Records. Compl. ¶¶ 115, 124. Additionally, even though Count I alleges breach of the AMA by Tempus, it also seeks an injunction ordering the "immediate[] return" of Aircraft Records and other assets. Id. ¶ 103. Similarly, GlobalOne's request for a declaratory judgment in Count II also includes a request for an injunction (1) ordering the "immediate[] return of Aircraft Records" and (2) "prohibiting Tempus and any of its affiliates, parent companies or subsidiaries (including [TASH]) from selling, pledging, transferring or otherwise disposing of GlobalOne's $750,000.00 Deposit." Id. ¶ 109.

However, as Defendants rightly point out, none of these requests for injunctive relief in the complaint qualifies as "seek[ing] to obtain interlocutory relief" as set forth in the AMA's arbitration clause. The common and ordinary meaning[4] of the term "interlocutory relief" is provisional or interim relief, such as a temporary restraining order or a preliminary injunction. See, e.g., Interlocutory, Black's Law Dictionary (9th ed. 2009) (defining "interlocutory" as "provisional; interim; temporary; not final[;] . . . not a final decision of the whole controversy"); see also Taylor v. Breese, 163 F. 678, 684 (4th Cir. 1908) (defining "interlocutory decree" as "one which is made pending the cause and before a final hearing on the merits"); Fort Sumter Tours, Inc. v. Andrus, 564 F.2d 1119, 1124 (4th Cir. 1977) (defining a preliminary injunction as "interlocutory injunctive relief"). It does not include permanent injunctions or other final

---

[4] Absent a special contractual definition, a term in a contract must be given its "usual, common and ordinary meaning." Nationwide Mut. Ins. Co. v. Overlook, LLC, 785 F. Supp. 2d 502, 518–19 (E.D. Va. 2011).

14

resolutions on the merits of the case.

GlobalOne does not dispute this definition. Instead, it claims that its request in the complaint for the "immediate[] return" of its Records and other assets is sufficient to show that it seeks an interlocutory injunction from this Court. See Opp., ECF No. 39 at 11–12 (citing Compl. ¶¶ 103, 109, 115, 124). However, the complaint does not include any requests for the Court to grant such relief on an immediate, provisional or emergency basis. Nor does the complaint attempt to establish the necessary factual basis for a preliminary injunction, i.e., that "[GlobalOne] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

The bottom line is that GlobalOne has not sought interlocutory relief in this case. From the time of filing the complaint in May, 2018, to the time Tempus purportedly returned all remaining Aircraft Records to GlobalOne in September, 2018, GlobalOne never filed any motions for preliminary injunctive relief in this Court even though it claimed to be suffering ongoing losses from Tempus's alleged retention of these Records. Furthermore, even though GlobalOne alleges in its complaint that it fears depletion of the $750,000 Operating Deposit and seeks an injunction prohibiting Tempus and its affiliates from dispersing such funds, GlobalOne has never moved the Court for such relief on a preliminary basis. Therefore, GlobalOne cannot credibly claim that this lawsuit is exempt from arbitration because it falls under the "interlocutory relief" exception in the AMA. Nor can this Court find Defendants' arbitration demand frivolous or illegitimate on such grounds.

For the foregoing reasons, the Court finds that Defendants' assertion that GlobalOne's claims in this case are subject to the mandatory arbitration provision of the AMA is not frivolous

or illegitimate. Therefore, the Court must refer this matter, including all threshold questions of arbitrability, to arbitration in accordance with Section 13.12 of the AMA.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Arbitration and to Stay Proceedings are hereby **GRANTED** pursuant to Sections 3 and 4 of the Federal Arbitration Act. ECF Nos. 31 and 32. Defendants' three motions to dismiss, in part, Plaintiff's complaint, which were filed in the alternative to Defendants' Motions to Compel and Stay, are therefore **DISMISSED WITHOUT PREJUDICE**. ECF Nos. 34, 35, 36.

Accordingly, the parties are hereby **DIRECTED** to arbitrate this dispute, including all threshold issues concerning the arbitrability of Plaintiffs' claims, in accordance with Section 13.12 of the Aircraft Management Agreement dated March 1, 2017. This action is hereby **STAYED** as of the date of this Order for a period of **SIX (6) MONTHS** or until the parties' arbitration is completed, whichever is shorter.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

Norfolk, VA
December 7, 2018